## WHITE *v*. McHUGHES.

### Opinion delivered January 9, 1911.

ELECTIONS—QUALIFICATIONS OF VOTER—POLL TAX.—Amendment No. 9 to Const. 1874, providing, as one of the qualifications of a legal voter, that he "shall exhibit a poll tax receipt or other evidence that he has paid his poll tax at the time of collecting taxes next preceding such election," contemplates a time for collecting taxes which had expired before the time at which the election is held.

Appeal from Pulaski Circuit Court, Second Division; *F. Guy Fulk*, Judge; reversed.

*Bradshaw, Rhoton & Helm*, for appellants.

*James H. Stevenson*, for appellees.

KIRBY, J. This suit is by appellants, under the usurpation-of-office statute, against appellees, to oust them from the offices of school directors of the Special District 18 of Owen Township, Pulaski County, created by act of the Legislature in 1907. It was alleged that appellants and appellees were the only candidates for the office of school director at the election held for three school directors in said district on May 21, 1910; that appellee W. A. McHughes received 84 votes, and appellees, J. A. Goodson and A. W. Hampton, received 81 votes each; that appellant J. M. White received 69 votes, and appellants, John Pressly and W. E. Grimmet, received 75 votes each at said election, and, upon the returns being filed with the county clerk, certificates of election were duly issued to appellees, who assumed and are exercising the duties of the office of school direc-

tors of said district; that 47 persons, naming them, voting for appellees were not qualified electors, not having poll-tax receipts for poll tax paid during the time for collecting taxes in the year 1909, and not qualified to vote at said election, and, deducting such illegal votes cast for appellees, appellants were the legally elected directors and entitled to the office. It was also alleged that A. W. Hampton was not a qualified elector, and not eligible to hold the office of school director, not having paid his poll tax and obtained a receipt therefor during the time for collecting taxes during the year 1909. The prayer of the complaint was that appellants be declared the legally elected directors, and that appellees be ousted from office.

Appellees demurred generally to the complaint, and for a second ground stated that it was not necessary that the persons whose votes were challenged as illegal should have receipts for poll taxes paid during the period from January to July, 1909, to entitle them to vote; and A. W. Hampton filed a like separate demurrer, and for a second ground alleged that it was not necessary, to render him a qualified elector and eligible to hold the office, that he should have paid his poll tax and obtained a receipt therefor during the tax-paying period from January to July, 1909. Demurrer was sustained, and judgment rendered against appellants, and they appealed.

The act creating the special school district, the election in which is involved in this case, provides that the qualified electors of said district shall from the electors of said district elect six directors. Acts 1907, page 1165.

The law provides that no person shall be eligible to office unless he is a qualified elector. Constitution, art. 19, § 3.

The only question in this case is whether persons possessing all these qualifications who failed to pay a poll tax, and obtain a receipt therefor at the time of collecting taxes for the year 1909 are entitled to vote, and are qualified electors eligible to hold office at an election held in the year 1910, before the first Monday in July thereof.

It is necessary in order to settle this question to determine the meaning of the provision in Amendment No. 9 to the Constitution relating to the payment of a poll tax by persons possessing the other required qualifications to vote.

The first Poll Tax Amendment (No. 2) was submitted in 1893, and found not to have been legally adopted, and the Legislature of 1907 resubmitted the question to the people in a proposed amendment, and the same was legally adopted as Amendment No. 9 to the Constitution. A statute was passed (Kirby's Digest, § § 2769-2773) to carry out the provisions of the old amendment, and likewise the act approved May 31, 1909, was passed to enforce the provisions of the new amendment.

The language of the old and new Poll Tax Amendments is identical, and as follows:

"Every male citizen of the United States, or male person who has declared his intention of becoming a citizen of the same, of the age of 21 years, who has resided in the State 12 months, in the county six months, and in the precinct or ward one month, next preceding any election at which he may propose to vote, except such persons as may for the commission of some felony be deprived of the right to vote by law passed by the General Assembly, and who shall exhibit a poll tax receipt or other evidence that he has paid his poll tax at the time of collecting taxes next preceding such election, shall be allowed to vote at any election in the State of Arkansas. Provided, etc." Amdt. No. 2, adopted Jan. 12, 1893; Kirby's Digest, § 2767; Acts 1907, p. 1256.

So, also, the language of the statutes enacted to enforce the provisions of these two amendments is identical. Each provides as follows:

"The 'time for collecting taxes,' as this term is employed in the Constitution in connection with the payment of poll taxes, is hereby defined to be the period between the first Monday in January and the Saturday next preceding the first Monday in July, on which last-named date the collector is required by law to make his final settlement with the county court. Any person liable to pay poll tax, and who has paid the same at any time within the dates named, shall, if possessed of the other qualifications required by law of an elector, be entitled to vote at any election held in this State at any time before the first Monday in July of the year succeeding that in which the payment is made." Kirby's Dig., § 2772; act April 10, 1893; act May 31, 1909, § 4; Acts 1909, pp. 942, 945.

The Legislature thus defined "the time for collecting taxes" in the amendment as a period and virtually the entire period prescribed by law for the collection of taxes from the first Monday in January to the Saturday next preceding the first Monday in July when the collector is by law required to make his final settlement.

The correctness of this definition was never questioned during the time the first amendment was regarded valid nor after its invalidity was suggested and the question resubmitted, and after it was duly adopted the next Legislature again defined it in the exact terms it had first used, and, continuing, said:

"Any person liable to pay poll tax, and who has paid the same at any time within the dates named, shall, if possessed of the other qualifications required by law of an elector, be entitled to vote at any election held in this State at any time before the first Monday in July of the year succeeding that in which the payment is made."

This only shows the construction placed upon it by the legislative branch of the government, and, if it enlarges or restricts its provision, is void and of no effect, it being beyond the power of the Legislature to change the sovereign will of the people as expressed in their supreme law, the Constitution. This definition of "the time for collecting taxes" is right, and the Constitution requires that the poll tax shall be paid at said time "next preceding such election," and this idea and language will be read into the part of said section last quoted, since the Legislature could not have prescribed it otherwise. There can be but one "the time for collecting taxes next preceding such election" and such time or period of time can not precede the election unless it is already finished, closed and expired before the election occurs. It is therefore evident that the language of the amendment refers to and means the time for collecting taxes, the said period already closed, expired and ended next before the time of election at which the elector proposes to vote. This construction gives the language of the amendment its plain, obvious and true meaning, and allows all the electors of the State who paid their poll tax and obtained receipts therefor "at the time for collecting taxes next preceding such election" to vote at any election held in the State at any time prior to the first Monday

in July, the end of the tax collecting period, of the year succeeding that in which the payment was made.

The law for convenience requires the names of all such electors reported by the collector under oath and printed by the election commissioners and furnished to the election judges that fraud may be prevented in elections and only those who are sufficiently interested to become duly qualified may have by their ballot a voice in the selection of candidates and officials and the conduct of the Government. .

The construction contended for by appellees would disqualify all who had paid a poll tax at the time for collecting taxes next before the election and limit it to such electors as paid during the current period for collecting taxes and before the election, for there can be but one time for collecting taxes next before an election, within the meaning of the amendment. To illustrate:

All primary elections for the nomination of candidates for office are now legal elections (Act 165, approved April 23, 1909), and only qualified electors can vote thereat, and if such primary election should be held the second Monday in January only those persons who paid a poll tax after the beginning of the time for collecting taxes the first Monday and before the election or during the first week in January could legally vote.

It follows that persons required to pay a poll tax, not having done so and obtained a receipt therefor during the time for collecting taxes, the said period, between the first Monday in January and the Saturday preceding the first Monday in July of the year 1909, were not qualified electors, and not entitled to vote nor eligible to hold office at the election held in May, 1910; and this is true notwithstanding they may have paid a poll tax during the time for collecting taxes in 1910, and before said election in May prior to the expiration of said time for collecting taxes, since this was not a payment within the meaning of the Constitution "at the time of collecting taxes preceding such election."

The court erred in sustaining the demurrer. The judgment is reversed, and the cause remanded with directions to overrule the demurrer and for other proceedings.

McCULLOCH, C. J., did not sit in this case.